OPINION
{¶ 1} Appellant, Hector L. Marquez, appeals from the judgment entry of the Ashtabula County Court of Common Pleas convicting him on one count of burglary. For the reasons discussed below, we affirm.
 {¶ 2} This matter arose from a burglary which occurred at 1422 Ohio Avenue, Ashtabula Ohio. On the morning of April 2, 2007, Jean Stark's dogs began barking prompting her to look out her front window. She observed two men walking together *Page 2 
down the street on which her house is located. She then observed the two men split. She watched as the smaller man, later identified as Esteven Velez, walked up the driveway of the home of John DiGiacomo, Stark's neighbor across the street. The taller man, later identified as appellant, continued walking down the street. Stark observed Velez approach DiGiacomo's side door. Velez then walked around to the front of the home and onto the porch. Stark testified Velez peered into the front window and began to bang on the front door. Stark knew DiGiacomo was not home. When she observed Velez return to the side door, she phoned the police.
 {¶ 3} While she was on the phone with the Ashtabula Police Department's dispatch, she observed Velez kick in the side door. Stark also observed appellant walking back toward the home. Stark stated appellant appeared to be looking around, as though he was watching for someone. When the police arrived, Stark observed Velez jump over a neighbor's fence and begin running while carrying a brown bag.
 {¶ 4} Sergeant Perry Johnson of the Ashtabula City Police Department arrived at the scene. He observed appellant on the sidewalk in front of the DiGiacomo residence. As Sgt. Johnson approached, appellant began to quickly walk away. The officer then pulled his vehicle in front of appellant to stop him. Appellant provided Sgt. Johnson with his name and, when asked what he was doing, he replied "nothing." Appellant stated he was alone and denied entering the burglarized home. Appellant was placed in Sgt. Johnson's police cruiser so the officer could confirm his identity.
 {¶ 5} Ashtabula police officer James Henry was also dispatched to the location. Once he arrived, he was told a suspect had fled on foot through the home's backyard. Officer Henry proceeded in the direction the suspect ran. He soon noticed an individual *Page 3 
walking through a nearby yard. He stopped the individual, later identified as Velez, and asked what he was doing. Velez responded that he was working for "Hector." Officer Henry observed a knife and a bag in Velez's hand. The officer ordered Velez to drop the weapon and set the bag on the ground. Once other officers arrived, Velez was arrested. The officers discovered the bag contained a live parrot.
 {¶ 6} Sgt. Johnson eventually spoke with Mr. DiGiacomo, whose home had been ransacked. DiGiacomo also told Johnson his parrot was missing. According to Johnson, a large sack of rice had been dumped onto the floor and the sack was missing. It was later established that the sack was used by Velez to transport the stolen bird from the home.
 {¶ 7} After being transported to the police station, Velez was Mirandized and interviewed by Sergeant Joe Cellitti. Although Velez initially denied involvement in the burglary, he eventually confessed to breaking into the home. Velez admitted that appellant was with him when he broke into the home, but testified at trial appellant did not tell him to burglarize the house. During the interview, Velez told Cellitti that he and appellant were going to burglarize a friend's mother-in-law's home. However, when they arrived, they found the home was occupied. They subsequently came across the DiGiacomo residence. Appellant told Velez that "he watched the house" and knew nobody was home because no vehicles were in the driveway. Velez then forcibly entered the home and stole DiGiacomo's bird.
 {¶ 8} On April 23, 2007, appellant was indicted on one count of burglary, in violation of R.C. 2911.12(A)(2), a felony of the second degree. Appellant pleaded not guilty. A jury trial commenced and, on June 20, 2007, appellant was found guilty of *Page 4 
complicity to commit burglary. Appellant was subsequently sentenced to a seven year term of incarceration.
 {¶ 9} Appellant filed a timely notice of appeal and now asserts three assignments of error for our review.
 {¶ 10} Appellant's first assignment of error states:
 {¶ 11} "The jury's verdict finding the appellant guilty of complicity to commit aggravated burglary was against the manifest weight of the evidence."
 {¶ 12} A challenge to the weight of the evidence requires an appellate court to engage in a limited weighing of the evidence in the interest of determining whether the greater amount of credible evidence supports the verdict. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In conducting the inquiry, a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and remanded. State v. Martin
(1983), 20 Ohio App.3d 172, 175. The discretionary power to grant a new trial should be exercised only in exceptional cases wherein the evidence weighs heavily against the conviction. Id.
 {¶ 13} We first point out that appellant was convicted of complicity to burglary, not complicity to aggravated burglary. This misnomer aside, R.C. 2911.12(A)(2) defines the crime of burglary, of which appellant was found complicit, and provides:
 {¶ 14} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 15} "* * * *Page 5 
 {¶ 16} "(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;"
 {¶ 17} Ohio's complicity statute, R.C. 2923.03 states, in relevant part:
 {¶ 18} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 19} "* * *
 {¶ 20} "(2) Aid or abet another in committing the offense;"
 {¶ 21} "Aiding and abetting is defined as assisting or facilitating `the commission of a crime, or to promote its accomplishment.'"State v. Higgins, 11th Dist. No. 2005-L-215, 2006-Ohio-5372, at ¶ 31, quoting State v. Johnson, 93 Ohio St.3d 240, 243, 2001-Ohio-1336. A defendant found guilty of complicity in the commission of an offense is prosecuted and punished "as if he were a principal offender." R.C. 2923.03(F).
 {¶ 22} The state presented evidence of eyewitness Jean Stark, the victim's neighbor. Mrs. Stark testified, on the morning of April 2, 2007, she observed two men walking together toward the home of her neighbor, John DiGiacomo. Once in front of the home, the two men split. While Velez walked towards the home, appellant kept walking, but, according to Stark, was "looking around * * * just to see if anything was going on."
 {¶ 23} According to Stark, Velez walked up DiGiacomo's driveway and walked toward the porch. Once on the porch, Velez looked in the windows, and knocked on the *Page 6 
door. He subsequently went to a side door; Stark testified she observed him "step back and take his leg and kick the door three times to break it in." According to Stark, as Velez broke in the home, appellant continued to pace back and forth in front of the home. She characterized appellant's behavior "looking around, like he was watching for something."
 {¶ 24} Sergeant Perry Johnson arrived at the scene first and observed appellant on the side walk in front of the home. As Sgt. Johnson approached appellant, he began to quickly walk away. Appellant did not admit to being involved in the burglary; however, after Velez was apprehended, he was questioned by Sgt. Joe Cellitti. During the interview, Velez stated that appellant told him he knew no one was home at the DiGiacomo residence at the time of the burglary because appellant told him he "watches" the house.
 {¶ 25} Although appellant never entered the home or otherwise participated as a principal in the burglary, the state submitted credible evidence that appellant was complicit in the burglary. The eyewitness testimony was particularly compelling as it tended to demonstrate that appellant was promoting the commission of the burglary by acting as a lookout for Velez. Moreover, the statement Velez provided Sgt. Cellitti indicated appellant urged or facilitated the commission of the burglary. By indicating he knew no one was home, appellant provided Velez with confirmation that he could forcibly enter the home without having to encounter occupants. We therefore hold the verdict was not against the manifest weight of the evidence. There was substantial evidence upon which the jury could reasonably conclude that all the elements of complicity to burglary were proved beyond a reasonable doubt. *Page 7 
 {¶ 26} Appellant's first assignment of error is overruled.
 {¶ 27} Appellant's second assignment of error asserts:
 {¶ 28} "The trial court erred by not providing a translator for appellant Hector Marquez and the witness Esteven Velez."
 {¶ 29} Under his second assignment of error, appellant asserts his co-defendant, Esteven Velez, who was called by the court as a witness for cross-examination by both parties, was unable to understand the English language. Appellant maintains Velez's lack of command of the English language rendered his testimony suspect and therefore the trial court erred in failing to appoint a translator pursuant to R.C. 2311.14(A)(1). We disagree.
 {¶ 30} The decision to appoint a translator, whether to assist a witness or a defendant, is within the trial court's sound discretion.State v. Mota, 6th Dist. L-04-1354, 2006-Ohio-3800, ¶ 23; State v.Saah (1990), 67 Ohio App.3d 86, 95. An appellate court will not upset the decision of the trial court regarding the need for an interpreter absent an abuse of discretion. Id. An abuse of discretion is more than an error of law or judgment; rather, it connotes a "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 31} R.C. 2311.14(A)(1) provides, in pertinent part:
 {¶ 32} "Whenever because of a hearing, speech or other impairment a party to or witness in a legal proceeding cannot readily understand or communicate, the court shall appoint a qualified interpreter to assist such person.* * *"
 {¶ 33} At no time during trial did the parties object to Velez's testimony or request the aid of an interpreter. This raises questions as to whether this issue was properly *Page 8 
preserved for review. See State v. Gegia, 157 Ohio App.3d 112,2004-Ohio-2124, at ¶ 26 (holding issues which are not raised and tried in the trial court cannot be raised for the first time on appeal). Waiver aside, we do not believe the trial court's decision to allow Velez to testify without the aid of an interpreter was arbitrary or unreasonable.
 {¶ 34} Here, Mr. Velez was called as a witness by the trial court and was questioned by both parties. Upon being duly sworn, Mr. Velez, without being questioned, stated: "Yeah I need an interpreter, so I don't understand." In light of this remark, the trial court inquired into Mr. Velez's purported need for an interpreter. Mr. Velez admitted he had been a defendant in two prior criminal cases in Ashtabula County, one before Judge Mackey, the judge presiding over the instant matter, and another before Judge Yost. In neither case did Mr. Velez request an interpreter. As Velez had not requested an interpreter in his previous cases and, more importantly, had previously appeared before Judge Mackey in a prior case in which he satisfactorily grasped the proceedings without the assistance of an interpreter, the court did not appoint an interpreter.
 {¶ 35} We recognize that Velez testified he possessed only a seventh grade education and did not know how to read or write in English. Further, defense counsel elicited testimony indicating Velez had difficulty understanding questions which included "big words" and sometimes had problems understanding English when it was spoken rapidly. However, Velez's education, literacy level, and ability to intellectually absorb "fast speech" are not dispositive of his ability to sufficiently comprehend the proceedings and the questions asked by counsel for the parties. *Page 9 
 {¶ 36} Velez testified he did understand English and, more importantly, comprehended the questions posed to him. Moreover, when asked about his ability to formulate a coherent answer to the attorneys' questions, he testified he can speak English but sometimes has "to think a lot before [he] can say it." While Velez expressed some reservations about his ability to fully understand the English language, his answers at trial remained responsive and exhibited an appreciation of the essence of the questions which were posed. In short, there is no indication that he did not understand the questions asked of him or instructions given to him by the trial court. Absent a positive request (by Velez or one of the parties) for an interpreter or, alternatively, some clear indicia that the alleged language barrier impaired Velez's ability to adequately understand or communicate in English, we are unable to conclude the court erred in failing to appoint an interpreter.
 {¶ 37} Finally, appellant claims the trial court erred in failing to appoint an interpreter to assist in his defense. Although appellant did not testify, defense counsel indicated, at sentencing, it had recently come to her attention that appellant could neither read nor write in English. She stated that these deficiencies encumbered appellant's ability to understand "the process of the pre-sentence investigation and remains confused about that process."
 {¶ 38} We point out that, notwithstanding counsel's disclosure regarding appellant's illiteracy and inability to write English, she did not make a specific request for an interpreter. Furthermore, counsel's remarks did not suggest appellant, due to the alleged language barrier, had difficulty communicating with her, understanding her, or comprehending the nature of the proceedings. Although the inability to read and write *Page 10 
English may be relevant to whether an interpreter should be appointed, the lack of these skills does not necessarily imply appellant was unable to understand the proceedings and participate in his own defense. As counsel never indicated she was unable to meaningfully communicate with appellant or vice versa, the trial court did not abuse its discretion in failing to appoint an interpreter.
 {¶ 39} Appellant's second assignment of error lacks merit.
 {¶ 40} Appellant's third assignment of error provides:
 {¶ 41} "The trial court erred in not determining appellant's competency when his incompetency was suggested to the court."
 {¶ 42} Appellant contends, under his final assignment of error, the trial court committed reversible error in not seeking a competency evaluation after defense counsel, during sentencing, explained to the court appellant was on medications which allegedly compromised his ability to comprehend the proceedings. We disagree.
 {¶ 43} It is a basic principle of due process that a criminal defendant who is not legally competent shall not be subjected to trial.Pate v. Robinson (1966), 383 U.S. 375, 378. A defendant is competent when he has "`sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and * * * has a rational as well as factual understanding of the proceedings against him.'" State v. Berry, 72 Ohio St.3d 354, 359, 1995-Ohio-310, quoting Dusky v. United States (1960),362 U.S. 402. Pursuant to R.C. 2945.37(B), the issue of competency may be raised by the court, prosecutor, or defense. Under the statute, however, a hearing is required only where objections are raised prior to trial. If the issue is raised during trial, R.C. 2945.37(B) mandates a hearing "only for good cause shown." *Page 11 
 {¶ 44} Whether a trial court should hold a competency hearing after the commencement of trial is a matter within the trial court's discretion and will not be reversed absent evidence that the court abused its discretion. State v. Rhaman (1986), 23 Ohio St.3d 146, 156.
 {¶ 45} Here, the record does not reflect anyone raised the issue of appellant's competency before trial. Moreover, neither the court, defense counsel, nor the prosecutor expressed any concern relating to appellant's competency during appellant's jury trial. Rather, the issue was first broached by defense counsel during the July 31, 2007 "attempted sentencing hearing." On record, defense counsel explained to the court that his medications limited his ability to understand the sentencing proceeding. Counsel told the court appellant had been under the care of a psychiatrist while in jail. The doctor prescribed "Lexapro, 20 milligrams a day, and Seroquel, 600 milligrams a day * * *" and saw appellant every two weeks. After the issue of appellant's competency was raised, the trial court summonsed the Ashtabula County Jail nurse, April Santini, to determine what, if any, effects the medication had on appellant's competency.
 {¶ 46} Nurse Santini testified Lexapro is an antidepressant and Seroquel is an antipsychotic. She stated that the effects of Lexapro are "situational," i.e., he is either "depressed or he's not." She further testified the major side effects of Seroquel are fatigue, i.e., "[appellant is] sleeping pretty much quite a bit, all the time." According to Nurse Santini, appellant had been taking the medications for over a month and his dosage had not varied. With respect to appellant's cognitive abilities, Nurse Santini testified she speaks with him "from time to time" while he is medicated and "he *Page 12 
understands what [she] communicate[s] to him without a problem." Nurse Santini testified she would be surprised if defendant was having difficulty "understanding simple questions and the [court] proceedings * * *" in which he was involved.
 {¶ 47} After hearing the testimony of the nurse, the court concluded "there was no reason to delay going forward with sentencing." This conclusion is tantamount to finding appellant was legally competent at the time the matter was raised.[1] We believe the trial court did not abuse its discretion in drawing this conclusion. The record does not demonstrate sufficient indicia of incompetency. Given the testimony of the nurse regarding the effects of appellant's medication and her testimony regarding appellant's ability to communicate with and understand her, there was no cause for a competency evaluation.
 {¶ 48} Although the court found appellant could be sentenced on July 31, 2007, defense counsel explained appellant had requested Dr. Tran, his psychiatrist, be present. In light of this request, the court continued sentencing. In a judgment entry dated August 14, 2007, the court formally reset the sentencing hearing. The order further provided:
 {¶ 49} "If counsel for the Defendant has a question concerning the Defendant's competency to be sentenced, she should file a motion in that regard and the Court will order the Defendant to be evaluated by the Forensic Psychiatric Center of Northeast Ohio, Inc." *Page 13 
 {¶ 50} No motion was filed and appellant was subsequently sentenced on October 25, 2007. At the sentencing hearing, defense counsel did state that appellant was not cooperating with her and did not "wish to communicate any instructions to [her] as to what [she was] to do at the sentencing * * *." In light of these difficulties, counsel had filed a motion to withdraw, which the court denied.
 {¶ 51} We recognize counsel expressed some concern about appellant's cooperation with her. However, counsel did not intimate that this failure to cooperate was a function of any confusion or lack of comprehension of the proceedings. Further, at no point during this hearing did appellant, his counsel, the prosecutor, or the court raise the competency question anew. With no motion before the court and without sufficient indicia of incompetence, we hold the trial court did not err in sentencing appellant without independently ordering a competency evaluation.
 {¶ 52} Appellant's third assignment of error is overruled.
 {¶ 53} For the reasons discussed above, appellant's three assignments of error are overruled. Therefore, the judgment of the Ashtabula County Court of Common Pleas is hereby affirmed.
DIANE V. GRENDELL, P.J., MARY JANE TRAPP, J., concur.
[1] The record reveals that there was no indication of incompetency at the time of appellant's jury trial. Specifically, his counsel stated, on record, that during his trial, appellant communicated and cooperated with his defense. *Page 1