[Cite as *State v. Marcum*, 2019-Ohio-2293.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  |  | JUDGES: |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 18-CAC- 11 0083 |
| JOHN F. MARCUM | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:          Criminal appeal from the Delaware
                                                             Municipal Court, Case No. 18TRC08128

JUDGMENT:                                        Affirmed

DATE OF JUDGMENT ENTRY:          June 7, 2019

APPEARANCES:

For Plaintiff-Appellee                         For Defendant-Appellant

MELISSA SCHIFFEL                          WILLIAM CRAMER
Delaware City Prosecutor                  470 Olde Worthington Road, Suite 200
70 Union Street                                 Westerville, OH 43082
Delaware, OH 43015

*Gwin, P.J.*

{¶1}   Appellant John F. Marcum ("Marcum") appeals the July 10, 2018 Judgment of the Delaware Municipal Court overruling his motion to suppress evidence. Plaintiff-appellee is the State of Ohio.

*Facts and Procedural History*

{¶2}   Trooper Ryan May has been a trooper with the Ohio State Highway patrol for approximately 6 years.  He was first trained in the apprehension and detection of impaired drivers at the patrol's academy.  Specifically, while at the academy in 2012 he learned how to conduct field-sobriety tests in accordance with the standards promulgated by the National Highway Traffic Safety Administration (NHTSA) in NHTSA's DWI Detection and Standardized Field Sobriety Testing manual.  Trooper May has updated his training to include training in the apprehension and detection of drivers impaired by drugs of abuse alone and in combination with alcohol—the training is known as ARIDE. Trooper May currently is certified to administer standardized filed sobriety tests.

{¶3}   On February 13, 2018, at approximately 9:03 p.m. Trooper May was on routine patrol on Interstate 71.  While on I-71 Trooper May noticed a pick-up truck travel over the lane markings on the highway several times. Marcum was driving the truck.

{¶4}   Based on these observations, Trooper May activated the overhead flashing light on his cruiser to stop the pick-up.  Trooper May noted that the pick-up took longer than usual to come to a complete stop on State Route 36/37.

{¶5}   Upon initial approach, Trooper May observed Marcum's eyes to be very glassy and blood shot.  Marcum also had slow speech and could not easily locate his vehicle information.  Trooper May observed Marcum took a long time in locating his

information and fumbled with paperwork on the passenger seat. Trooper May also had to instruct Marcum several times to keep his hands on the steering wheel. Trooper May did not notice any alcohol or drug odors in his encounter with Marcum.

{¶6} Trooper May asked Marcum to step out of his truck and asked Marcum if he would be willing to participate in some field-sobriety tests.

{¶7} Trooper May administered the horizontal gaze nystagmus (HGN) test to Marcum. When checking Marcum's eyes, Trooper May notice a lack of smooth pursuit in both eyes. Also, Trooper May noted nystagmus in both of Marcum's eyes at maximum deviation. When the trooper looked for onset of nystagmus prior to 45 degrees, however, he did not observe any clues. Trooper May observed four of six possible clues. In addition, Trooper May had to re-instruct Marcum to follow his stimulus during this test.

{¶8} Trooper May then administered the vertical gaze nystagmus test (VGN). He observed no clues during this test.

{¶9} Trooper May next explained and demonstrated the walk-and-turn test (WAT) to Marcum. Trooper May noted the following clues: defendant moved his feet for balance during the instruction phase; did not touch heel-to-toe; stopped while walking; stepped off the line; took an incorrect number of steps, and improperly turned. Trooper May observed a total of seven clues during the WAT test.

{¶10} Trooper May then administered the one-leg stand test (OLS). Marcum told Trooper May that his legs were shaking. He further told the officer that he had a bad knee. During the test Trooper May noted three clues: Marcum swayed; raised his arms for balance; and, put his foot down during the test.

{¶11} Trooper May asked Marcum to recite the alphabet form the letter "D" to the letter "O." Marcum recited the alphabet as instructed.

{¶12} After Marcum had completed all of the tests, Trooper May placed Marcum under arrest for committing an OVI offense. Specifically, Trooper May believed Marcum to be operating a vehicle while impaired by drugs.

{¶13} Marcum's urine sample was sent to the state crime lab and tested positive for Carboxy-THC, a marijuana metabolite, at a rate of 131.46 nomograms per milliliter. As a result, Marcum was separately charged with a per se OVI offense. [Case No. 18TRC08128].

{¶14} Marcum filed a motion to suppress, challenging the traffic stop, reasonable suspicion of OVI to support the field sobriety tests, probable cause to arrest for OVI, and the urine collection and testing procedures. At the suppression hearing, Marcum withdrew the challenge to the traffic stop. After the suppression hearing, the trial court issued a written entry denying the motion.

{¶15} The state dismissed the impaired OVI [Case No. 18TRCO2023] and Marcum pled no contest to the per se Offense [Case No. 18TRC081281. Marcum was sentenced to twenty days in jail, two years of community control, a fine of $600 plus costs, a three-year driver's license suspension, and alcohol/drug assessment and treatment.

*Assignments of Error*

{¶16} Marcum raises two Assignments of Errors,

{¶17} "I. APPELLANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE STATE AND FEDERAL CONSTITUTIONS WAS VIOLATED WHEN COUNSEL WITHDREW THE CHALLENGE TO THE TRAFFIC STOP.

{¶18} "II. APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO BE FREE OF UNREASONABLE SEARCHES AND SEIZURES WERE VIOLATED WHEN APPELLANT WAS SUBJECTED TO FIELD SOBRIETY TESTS WITHOUT A REASONABLE SUSPICION THAT HE WAS UNDER THE INFLUENCE."

I.

{¶19} In his First Assignment of Error, Marcum argues that his trial attorney was ineffective because he withdrew Marcum's challenge to the traffic stop. [Appellant's Brief at 4].

**STANDARD OF APPELLATE REVIEW.**

{¶20} To obtain a reversal of a conviction based on ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687–688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693(1984). A defendant's failure to satisfy one prong of the Strickland test negates a court's need to consider the other. *Strickland* at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699; *State v. Madrigal*, 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52 (2000).

{¶21} In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.

**{¶22}** The United States Supreme Court discussed the prejudice prong of the *Strickland* test,

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

> "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ——, ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689–690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; *see also Bell*

*v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002);

*Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180

(1993). The question is whether an attorney's representation amounted to

incompetence under "prevailing professional norms," not whether it

deviated from best practices or most common custom. *Strickland*, 466 U.S.,

at 690, 104 S.Ct. 2052.

*Harrington v. Richter,* 562 U.S. 86, 104-105, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

**Failure to File a Motion to Suppress.**

{¶23} We find that Marcum's argument that his counsel withdrew the challenge to

the traffic stop is analogous to a situation where counsel fails to file a motion to suppress.

{¶24} Trial counsel's failure to file a suppression motion does not per se constitute

ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000–Ohio–

0448; *Accord, State v. Ortiz,* 5th Dist. Stark No. 2015CA00098, 2016-Ohio-354, ¶56.

Counsel can only be found ineffective for failing to file a motion to suppress if, based on

the record, the motion would have been granted. *State v. Lavelle*, 5th Dist. No. 07 CA

130, 2008–Ohio–3119, at ¶ 47; *State v. Cheatam*, 5th Dist. No. 06–CA–88, 2007–Ohio–

3009, at ¶ 86. The defendant must further show that there is a reasonable probability that

the outcome would have been different if the motion had been granted or the defense

pursued. *See Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91

L.Ed.2d 305 (1986); *see, also, State v. Santana*, 90 Ohio St.3d 513, 739 N.E.2d 798

(2001), *citing State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).

**ISSUE FOR APPEAL.**

**A. Whether there is a reasonable probability a motion to suppress the traffic stop would have been granted.**

*1. Whether the Trooper had* a reasonable and articulable suspicion to initiate a traffic stop *of Marcum's vehicle.*

**{¶25}** The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *."  The Fourth Amendment is enforced against the States by virtue of the due process clause of the Fourteenth Amendment of the United States Constitution.  *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The stop of a vehicle and the detention of its occupants by law enforcement, for whatever purpose and however brief the detention may be, constitutes a seizure for Fourth Amendment purposes.  *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), *citing United States v. Martinez-Fuerte*, 428 U.S. 543, 556-558, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).

**{¶26}** The Supreme Court of Ohio has observed, "'[a]uthorities seem to be split as to whether a traffic stop is reasonable when supported merely by reasonable suspicion, or whether the heightened standard of probable cause must underlie the stop.'"  *City of Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 13, *quoting Gaddis ex rel. Gaddis v. Redford Twp.,* 188 F.Supp.2d 762, 767(E.D.Mich.2002).  There are actually two types of "traffic" stops, and each has a different constitutional standard applicable to it.  In *State v. Moller*, the Court of Appeals observed,

First is the typical non-investigatory traffic stop, wherein the police officer witnesses a violation of the traffic code, such as crossing over the centerline of a road, and then stops the motorist for this traffic violation. Second is the investigative or "*Terry*" stop, wherein the officer does not necessarily witness a specific traffic violation, but the officer does have sufficient reason to believe that a criminal act has taken place or is occurring, and the officer seeks to confirm or refute this suspicion of criminal activity. *See Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1879-1880 [20 L.Ed.2d 889]. A non-investigatory traffic stop must be supported by probable cause, which arises when the stopping officer witnesses the traffic violation. *See Whren v. United States* (1996), 517 U.S. 806, 810, 116 S.Ct. 1769, 1772 [135 L.Ed.2d 89]; *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 109, 98 S.Ct. 330, 332 [54 L.Ed.2d 331]. By contrast, an investigatory *Terry* stop is proper so long as the stopping officer has "reasonable articulable suspicion" of criminal activity. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879-1880.

12th Dist. Butler No. CA99-07-128, 2000 WL 1577287 (Oct. 23, 2000); *Accord, State v. Baughman*, 192 Ohio App.3d 45, 2011-Ohio-162, 947 N.E.2d 1273 (12th Dist.), ¶ 14; *State v. Nwachukwa*, 3rd Dist. Marion No. 9-15-03, 2015-Ohio-3282, ¶ 24; ¶ 26; *State v. Woods,* 5th Dist. Licking No. 18-CA-13, 2018-Ohio-3379, 117 N.E. 3d 1017, ¶14.

{¶27} The cause for a non-investigatory traffic stop has been succinctly stated by the Supreme Court of Ohio: "Where a police officer stops a vehicle based upon probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable

under the Fourth Amendment to the United States Constitution[.]" *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-21, 665 N.E.2d 1091 (1996). Probable cause is defined in terms of "facts or circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

{¶28} In *State v. Mays*, 119 Ohio St.3d 406, 894 N.E.2d 1204, 2008-Ohio-4538, the defendant argued that his actions in the case – twice driving across the white edge line – were not enough to constitute a violation of the driving within marked lanes statute, R.C. 4511.33. Id. at ¶ 15. The appellant further argued that the stop was unjustified because there was no reason to suspect that he had failed to first ascertain that leaving the lane could be done safely or that he had not stayed within his lane "as nearly as [was] practicable," within the meaning of R.C. 4511.33(A)(1). In rejecting these arguments, the Supreme Court noted, "the question of whether appellant might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." Id. at ¶ 17. The Supreme Court concluded that a law-enforcement officer who witnesses a motorist drift over lane markings in violation of a statute that requires a driver to drive a vehicle entirely within a single lane of traffic has reasonable and articulable suspicion sufficient to warrant a traffic stop, even without further evidence of erratic or unsafe driving. Id. at syllabus. In *Mays,* the Ohio Supreme Court made the following observation as it pertains to Ohio law,

Appellant's reliance on [*Dayton v.*] *Erickson* [76 Ohio St.3d 3, 665 N.E.2d 1091 (1996)], and on *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89, is misplaced. Probable cause is certainly a complete justification for a traffic stop, *but we have not held that probable cause is required.* Probable cause is a stricter standard than reasonable and articulable suspicion. *State v. Evans* (1993), 67 Ohio St.3d 405, 411, 618 N.E.2d 162. The former subsumes the latter. Just as a fact proven beyond a reasonable doubt has by necessity been proven by a preponderance, an officer who has probable cause necessarily has a reasonable and articulable suspicion, which is all the officer needs to justify a stop. *Erickson* and *Whren* do not hold otherwise.

119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23 (emphasis added). The Ohio Supreme Court concluded,

Therefore, if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by *a reasonable and articulable suspicion* considering all the circumstances, then the stop is constitutionally valid.

119 Ohio St.3d 406, ¶8 (emphasis added).

**{¶29}** In the case at bar, Trooper May witnessed "a couple" of marked lanes violations. Thus, the trooper had reasonable and articulable suspicion sufficient to stop Marcum's vehicle.

**{¶30}** As there is not a reasonable probability that a motion to suppress the traffic stop would have been granted, trial counsel was not ineffective in withdrawing Marcum's challenge to the traffic stop.

**{¶31}** Marcum's First Assignment of Error is overruled.

II.

**{¶32}** In his Second Assignment of Error Marcum contends that that in overruling his motion to suppress the trial court erroneously concluded that Trooper Mays had a reasonable, articulable suspicion that he was driving under the influence of alcohol to justify prolonging the traffic stop to conduct field sobriety testing. [Appellant's Brief at 6.]

**STANDARD OF APPELLATE REVIEW.**

**{¶33}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, generally, *United States v. Arvizu*, 534

U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

### ISSUE FOR APPEAL.

### A. Whether the lawful detention for the traffic infraction became an unlawful detention when the officer decided to conduct field sobriety tests. (FST's).

{¶34} A request made of a validly detained motorist to perform field sobriety tests is generally outside the scope of the original stop, and must be separately justified by other specific and articulable facts showing a reasonable basis for the request. *State v. Albaugh*, 5th Dist. Tuscarawas No. 2014 AP 11 0049, 2015-Ohio-3536, 2015 WL 5096900, ¶18, *quoting State v. Anez*, 108 Ohio Misc.2d 18, 26–27, 738 N.E.2d 491 (2000). Although requiring a driver to submit to a field sobriety test constitutes a seizure within the meaning of the Fourth Amendment, courts have generally held that the intrusion on the driver's liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion that the driver is under the influence of alcohol (or another drug) in order to conduct a field sobriety test. *See State v. Bright*, 5th Dist. Guernsey No. 2009–CA–28, 2010-Ohio-1111, ¶ 17, *citing State v. Knox*, 2nd Dist. Greene No. 2005–CA–74, 2006-Ohio-3039. Under a "totality of the circumstances" approach, we look at the entirety of the events leading to the officer's decision to conduct field sobriety tests. *See, e.g., State v. Locker*, 5th Dist. Stark App. No. 2015CA00050, 2015-Ohio-4953, ¶ 36, *citing State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980).

**{¶35}** "Reasonable suspicion is "* * * something more than an inchoate or un-particularized suspicion or hunch, but less than the level of suspicion required for probable cause." *State v. Shepherd*, 122 Ohio App.3d 358, 364, 701 N.E.2d 778 (2nd Dist.1997). "A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Farey*, 5th Dist. Stark No. 2017CA00137, 2018-Ohio-1466, ¶ 23, *citing Village of Kirtland Hills v. Strogin*, 6th Dist. Lake App. No.2005–L–073, 2006-Ohio-1450, ¶ 13 (internal citation omitted).

**{¶36}** In analyzing similar cases, we have accepted the template set forth by the Supreme Court of Ohio in *State v. Batchili*, 113 Ohio St.3d 403, 2007–Ohio–2204, 865 N.E.2d 1282, paragraph two of the syllabus: "The 'reasonable and articulable' standard applied to a prolonged traffic stop encompasses the totality of the circumstances, and a court may not evaluate in isolation each articulated reason for the stop." The intrusion on the drivers' liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion the driver is under the influence of alcohol in order to conduct a field sobriety test. *State v. Knox,* 2nd Dist. Greene App. No. 2005–CA–74, 2006–Ohio–3039. *See also, State v. Bright*, 5th Dist. Guernsey App. No. 2009–CA–28, 2010–Ohio–1111.

**{¶37}** Marcum cites *State v. Newson,* 11th Dist. Ashtabula No. 2012-A-0019, 2012-Ohio-5826 and *State v. Gustin*, 87 Ohio App.3d 859, 623 N.E.2d 244 (12th Dist. 1993). Marcum argues that Marcum did not admit drinking, was not involved in an accident, had no odor of alcohol and drugs, and only committed a marked lanes violation.

He contends therefore that the officer lacked a reasonable and articulable suspicion sufficient to support the request for FST's.

**{¶38}** Marcum's reading of both cases is superficial. In *Newsome,* the trial court sustained Newsome's motion to suppress. The state appealed. On appeal, the court noted,

> The officers specifically testified that appellee showed no signs of intoxication. Appellee's eyes were not red; he did not slur his words; he had no odor of alcohol; and he was highly cooperative with the investigating officers.

2012-Ohio-5826, ¶17. The court further noted,

> In this case, appellee's admission to consuming one large beer was the only factor upon which Officer Defina relied to conduct field sobriety tests. Because it is not illegal to consume alcohol and drive in this state, appellee's admission, standing alone, is insufficient to establish reasonable suspicion of intoxication. Alcohol ingestion is not tantamount to alcohol impairment.

**{¶39}** 2012-Ohio-5826, ¶ 21 (citations omitted).

**{¶40}** In *Gustin,* also cited by Marcum, Gustin had been involved in an accident. At the time of the accident, the road was wet and fog had reduced visibility. 87 Ohio App.3d at 860, 623 N.E.2d 244. "Gustin was bleeding from a cut on his forehead suffered when he was thrown against his vehicle's windshield. Gustin's eyes were neither bloodshot nor glassy, his speech was not slurred, and there was no odor of alcohol about him, although he strongly smelled of cologne. Ward administered a horizontal gaze

nystagmus ("HGN") test to Gustin, the result of which, according to Ward, indicated that Gustin was under the influence of alcohol. After having Gustin perform additional field sobriety tests, Ward arrested Gustin for driving while under the influence of alcohol. Although Gustin admitted to consuming one beer, it is unclear whether he made this statement to Ward before or after Ward subjected Gustin to the HGN test and other field sobriety tests." 87 Ohio App.3d at 860, 623 N.E.2d 244. As was true in *Newsome* on appeal the court noted,

> The only substantive factor to support a reasonable suspicion that Gustin was under the influence of alcohol was his statement that he had consumed one beer. As previously noted, however, it is unclear whether Gustin made this statement before or after Ward administered the HGN test. Since Ward testified that his initial action was to administer the HGN test, it is reasonable to assume that the court determined that Gustin's statement was made following the test.

87 Ohio App.3d at 860 - 861, 623 N.E.2d 244.

**{¶41}** In the case at bar, Trooper May said that he observed Marcum make a "couple lane violations." T. at 16. He also stated Marcum was slow to stop on the side of the road. Id. While at the window, Trooper May observed that Marcum's eyes were "very glassy and bloodshot" and that his speech was slow. Id. Additionally, Trooper May observed that Marcum "took a long time to locate his vehicle information" and fumbled with paperwork on his passenger seat. T. at 17. Marcum could not keep his hands on the steering wheel. Id.

{¶42} Based upon the totality of the circumstances, we find Trooper May relied upon specific, articulable facts giving rise to a reasonable suspicion Marcum was driving under the influence, that an extension of the initial detention for the performance of field sobriety testing was justified, and the ruling of the trial court was correct.

{¶43} Marcum's Second Assignment of Error is overruled.

{¶44} The judgment of the Delaware County Municipal Court is affirmed.


By Gwin, P.J.,

Wise, John, J, and

Delaney, J., concur