[Cite as *State v. Benge*, 2021-Ohio-4226.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellant | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2021 CA 0046 |
| JUSTAN D. BENGE | : |  |
|  | : |  |
| Defendant-Appellee | : | OPINION |


CHARACTER OF PROCEEDING:   Criminal appeal from the Licking County
                            Court of Common Pleas, Case No.
                            2020CR00527

JUDGMENT:                   Affirmed




DATE OF JUDGMENT ENTRY:     December 3, 2021

APPEARANCES:

For Plaintiff-Appellant            For Defendant-Appellee

WILLIAM C. HAYES                   KORT GATTERDAM
Licking County Prosecutor          ERIK P. HENRY
BY: PAULA SAWYERS                  290 Plaza, Suite 1300
Assistant Prosecutor               280 North High Street
20 South Second Street, 4th Floor  Columbus, OH 43215
Newark, OH 43055

*Gwin, P.J.*

{¶1}    Plaintiff-appellant the State of Ohio appeals the June 18, 2021 Judgment Entry of the Licking County Court of Common Pleas granting defendant-appellee Justan D. Benge's ["Benge"] motion to suppress evidence.

*Facts and Procedural History*

{¶2}    Benge was indicted on October 1, 2020, for one count of Aggravated Possession of a Controlled Substance (Methamphetamine), a violation of R.C. 2925.11(A)(C)(1)(c), a felony of the second degree.

{¶3}    On March 2, 2021, Benge filed a Motion to Suppress, arguing that the traffic stop on the vehicle was unconstitutional, that the search of the vehicle was unlawful, and that his statements should be suppressed because they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). A hearing was held on the Motion to Suppress on April 15, 2021.

{¶4}    At the evidentiary hearing, the state called two witnesses: Deputy Richard Buehler of the Licking County Sheriff's Office and former Deputy Anthony Southard. Former Deputy Daniel Pennington, who initiated the traffic stop, did not testify.

{¶5}    The following evidence is adduced from the record of the suppression hearing.

{¶6}    Deputy Richard Buehler with the Licking County Sheriff's Office testified that on April 26, 2020, he was riding in a marked cruiser with Former Detective Pennington with the Central Ohio Drug Enforcement Task Force. Supp.T. at 10. The two of them were parked in the median monitoring traffic on Interstate 70. Former Deputy Anthony Southard was also parked in his cruiser in the median talking to

Buehler and Pennington. Supp.T. at 55. Deputy Buehler testified that at approximately midnight, a red BMW drove by their stationary location. Deputy Buehler testified that they pulled out to follow this vehicle because they believed it would be a good vehicle for drugs or drug narcotics. Supp. T. at 22. Deputy Buehler further testified that they intended to find a traffic violation in order to stop the vehicle. Supp. T. at 24; 26. Former Detective Pennington pulled out to follow, followed a short time later by former Deputy Southard. Supp. T. at 56.

{¶7} Deputy Buehler testified they observed the BMW exit I-70 to the on ramp at State Route 310 in Licking County, Ohio. Deputy Buehler testified he personally observed the front two tires of the vehicle over the stop bar and a traffic stop was conducted. Supp. T. at 10-11.

{¶8} Phillip Moore was driving the red BMW, Benge was sitting in the front passenger seat, and two juveniles were seated in the rear seats of the car. Supp. T. at 13. After gathering information it was learned that Benge had an active arrest warrant. Supp. T. at 11; 13. Benge was removed from the car. The search of Benge revealed that he had no drugs or drug paraphernalia on his person. Supp. T. at 31.

{¶9} Former Deputy Anthony Southard arrived with his K-9 partner Kimber. Supp. T. at 50-51. A free air search or walk around by the vehicle indicated the presence of drugs inside the car. Id. at 51-52. A subsequent search of the car revealed the presence of the drugs.

{¶10} State's Exhibit 1, the cruiser video from the traffic stop, was played at the suppression hearing, showing the initial traffic violation and stop.

{¶11} By Judgment Entry filed June 18, 2021 the trial court granted Benge's motion to suppress.

*Assignment of Error*

{¶12} The state raises one assignment of error,

{¶13} "I. THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION TO SUPPRESS, AS THE TRIAL COURT'S FINDINGS OF FACT WERE NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE."

*Law and Analysis*

**Jurisdiction of the Court of Appeals**

{¶14} Initially, we must determine whether we have jurisdiction to consider the merits of this appeal. Subject-matter jurisdiction may not be waived or bestowed upon a court by the parties to the case. *State v. Wilson*, 73 Ohio St.3d 40, 46, 652 N.E.2d 196, 200 (1995). It may be raised sua sponte by an appellate court. *State ex rel. Wright v. Ohio Adult Parole Auth.*, 75 Ohio St.3d 82, 84, 661 N.E.2d 728, 731(1996).

{¶15} A court of appeals has jurisdiction to entertain the state's appeal from a trial court's decision to suppress evidence only where the state has complied with Crim.R. 12(K). *State v. Buckingham*, 62 Ohio St.2d 14, 402 N.E.2d 536(1980), syllabus (interpreting former Crim.R. 12(J)).

{¶16} Crim.R. 12(K) states in pertinent part:

When the state takes an appeal as provided by law from an order suppressing or excluding evidence, the prosecuting attorney shall certify that both of the following apply:

(1) The appeal is not taken for the purpose of delay;

(2) The ruling on the motion or motions has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed.

The appeal from an order suppressing or excluding evidence shall not be allowed unless the notice of appeal and the certification by the prosecuting attorney are filed with the clerk of the trial court within seven days after the date of the entry of the judgment or order granting the motion.

* * *

{¶17} Our review of the record reveals a certifying statement timely filed by the prosecutor as outlined in Crim.R. 12(K). We therefore have jurisdiction to proceed to the merits of this appeal.

## STANDARD OF APPELLATE REVIEW

{¶18} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the

applicable legal standard.  *See Burnside, supra, citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); *See,* generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996).  That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers."  *Ornelas*, supra at 698, 116 S.Ct. at 1663.

**ISSUE FOR APPEAL:**  *Whether the trial court's decision to grant Bunge's motion to suppress is supported by competent, credible evidence*

{¶19}   In *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4538, 894 N.E.2d 1204, the defendant argued that his actions in the case – twice driving across the white edge line – were not enough to constitute a violation of the driving within marked lanes statute, R.C. 4511.33. Id. at ¶ 15[1]. The appellant further argued that the stop was unjustified because there was no reason to suspect that he had failed to first ascertain that leaving the lane could be done safely or that he had not stayed within his lane "as nearly as [was] practicable," within the meaning of R.C. 4511.33(A)(1). In rejecting these arguments, the Supreme Court noted, "the question of whether appellant might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have

---

[1] *But see, State v. Turner,* 163 Ohio St.3d 421, 2020-Ohio-6773, wherein the Ohio Supreme Court held, "that the single solid white longitudinal line on the right-hand edge a roadway—the fog line—marks the edge of the roadway and that such a marking merely "discourages or prohibits" a driver from "crossing" it, not "driving on" or "touching" it." Id. at ¶37.  In other words, to constitute a marked lanes violation the vehicles tires must "cross the single solid white longitudinal line—the fog line." Id., ¶ 35.

a legal defense to the charge." Id. at ¶ 17. The Supreme Court concluded that a law-enforcement officer who witnesses a motorist drift over lane markings in violation of a statute that requires a driver to drive a vehicle entirely within a single lane of traffic has reasonable and articulable suspicion sufficient to warrant a traffic stop, even without further evidence of erratic or unsafe driving. Id. at syllabus. In *Mays*, the Ohio Supreme Court made the following observation as it pertains to Ohio law,

> Appellant's reliance on [*Dayton v.*] *Erickson* [76 Ohio St.3d 3, 665 N.E.2d 1091 (1996)], and in *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89, is misplaced. Probable cause is certainly a complete justification for a traffic stop, *but we have not held that probable cause is required.* Probable cause is a stricter standard than reasonable and articulable suspicion. *State v. Evans* (1993), 67 Ohio St.3d 405, 411, 618 N.E.2d 162. The former subsumes the latter. Just as a fact proven beyond a reasonable doubt has by necessity been proven by a preponderance, an officer who has probable cause necessarily has a reasonable and articulable suspicion, which is all the officer needs to justify a stop. *Erickson* and *Whren* do not hold otherwise.

119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23. (Emphasis added). The Ohio Supreme Court concluded,

> Therefore, if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by *a reasonable and articulable suspicion considering all the circumstances,* then the stop is constitutionally valid.

119 Ohio St.3d 406, ¶8 (emphasis added). *See, State v. Marcum*, 5th Dist. Delaware No. 18-CAC-11 0083, 2019-Ohio-2293.

**The Trial Court's Decision Is Supported by Competent, Credible Evidence.**

*1. The testimony of the deputies at the suppression hearing*

**{¶20}** The trial court found that the testimony of the deputies was not credible. The record contains competent, credible evidence to support the trial court's finding.

**{¶21}** The court noted that Deputy Pennington, who initiated the traffic stop, did not testify. The trial court noted,

> Pennington lost his job because he falsified police reports to suggest he had seized evidence and placed the evidence in the property room when there was no evidence the property was ever seized and turned into the property room. Likewise, Officer Southard who was a deputy at the time of the traffic stop, had resigned his deputy's position for the same reasons. At the time of the hearing, he was employed as an officer for the Minerva Park Police Department.

*Decision and Order Granting Defendant's Motion to Suppress*, filed June 18, 2021 at n.1. *Accord,* Supp. T. at 33-34; 48; 61-64.

**{¶22}** Deputy Buehler testified that he and former Deputy Pennington were watching traffic on I-70 for "human behavior." Supp. T. 21. Deputy Buehler claimed that former Deputy Pennington observed a "B pillar tactic" in which the driver of the vehicle hide his face from view. Supp. T. at 22; 23; 43. However, Deputy Buehler admitted that neither he nor former Deputy Penning made any mention in the required written reports of any "human behavior," B pillar tactics or being unable to see the driver's face as a

reason for following or stopping the red BMW. Supp. T. 22-23; 45.  Deputy Buehler noticed no traffic violations as the red BMW passed his location, noticed no traffic violations as they caught up to the red BMW, and observed the vehicle driving at the appropriate rate of speed use the turn signal before changing lanes. Supp. T. at 24-25.

{¶23} Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false. *Cross v. Ledford,* 161 Ohio St. 469, 477-478, 120 N.E.2d 118 (1954), *citing Rice v. City of Cleveland*, 114 Ohio St. 299, 477-478 58 N.E.2d 768.

{¶24} Accordingly, we must defer to the trial court's factual findings concerning the credibility of the deputies because competent, credible evidence exists to support those findings.

*2. The dashcam video.*

{¶25} The trial court found,

> The cruiser video showed that the BMW lawfully changed lanes with a blinker to travel on to the exit ramp at State Route 310.  The vehicle then lawfully stops at or before the stop bar and edges toward the intersection as it safely completes a right turn on red.  See Defense Exhibit A.
>
> Testimony is one thing. Video proof is another. There was no justification to stop the vehicle for not stopping before the stop bar. The driver complied with the law. As a result, there was simply no basis for this traffic stop to have occurred, other than to pursue a hunch.

{¶26}  R.C. 4511.13 Signal indications provides in relevant part,

(C) Steady red signal indication:

(1)(a) Vehicular traffic, streetcars, and trackless trolleys facing a steady circular red signal indication, unless entering the intersection to make another movement permitted by another signal indication, *shall stop at a clearly marked stop line*; but if there is no stop line, traffic shall stop before entering the crosswalk on the near side of the intersection; or if there is no crosswalk, then before entering the intersection; and shall remain stopped until a signal indication to proceed is displayed *except as provided in divisions (C)(1), (2), and (3) of this section.*

(b) Except when a traffic control device is in place prohibiting a turn on red or a steady red arrow signal indication is displayed, vehicular traffic facing a steady circular red signal indication *is permitted, after stopping, to enter the intersection to turn right*, or to turn left from a one-way street into a one-way street. The right to proceed with the turn shall be subject to the provisions that are applicable after making a stop at a stop sign.

Emphasis added. The statute clearly allows a vehicle to enter the intersection to make a right turn. Nowhere does the statue require that a motorist's view be obstructed in order to move up onto or across the stop line before making the turn.

{¶27}  After reviewing the record, we find that competent, credible evidence in the form of the dashcam video of the stop supports the trial court's finding of fact that that the deputies did not have a reasonable, articulable suspicion to initiate the traffic stop. Competent, credible evidence supports the trial court's finding that the dash cam video

shows the BMW lawfully change lanes with a blinker to travel on to the exit ramp at State Route 310, then lawfully stop at or before the stop bar and edge toward the intersection as it safely completed a right turn on red.

{¶28}  This is not a case where the state argued that the officer misinterpreted the requirements or application of R.C. 4511.13. Accordingly, because competent, credible evidence supports the trial court's finding that no traffic violation occurred, the trial court correctly concluded that the officers could not have had a reasonable, articulable suspicion to initiate a traffic stop.

{¶29}  Appellant's sole Assignment of Error is overruled.

{¶30}   For the reasons stated in the foregoing opinion, the judgment of the Licking County Court of Common Pleas is hereby affirmed.

By Gwin, P.J.,

Delaney, J., and

Wise, Earle, J., concur