[Cite as *State v. Ghimire*, 2024-Ohio-1747.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| ANISH GHIMIRE, | : | Case No. 2023 CA 00025 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:             Appeal from the Fairfield County
                                     Municipal Court, Case No. TRC
                                     2209054

JUDGMENT:                            Affirmed

DATE OF JUDGMENT:                    May 6, 2024

APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

JAMES E. YOUNG                              PETER SCRANTON
City of Lancaster                           Bowen, Scranton, & Olsen, LLC
Law Director & Prosecutor's Office          536 S High Street
Assistant Prosecuting Attorney              Columbus, Ohio 43215

*Baldwin, J.*

{¶1} The appellant appeals the trial court's denial of his motion to suppress evidence. Appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND THE CASE

{¶2} On October 25, 2022, at approximately 2:30 a.m., the appellant was operating his motor vehicle northbound in the left hand lane on State Route 256 in Fairfield County, Ohio. Ohio State Trooper Clark Franz was on patrol at the time, heading southbound on State Route 256, when his attention was drawn to the appellant's vehicle due to the appellant's "poor lane position." Trooper Franz made a U-turn and began to follow the appellant, who had shifted to the right hand lane. While following the appellant, Trooper Franz observed the appellant drift to the left and cross the marked dash lane lines separating the two northbound lanes by a tire width. Based upon this violation, Trooper Franz pulled the appellant over.

{¶3} As Trooper Franz approached the appellant's vehicle, and upon interacting with the appellant, he smelled a strong odor of alcohol and observed that the appellant had bloodshot and glassy eyes. Based upon the appellant's marked-lane violation, and the indicia of impairment, Trooper Franz asked the appellant to exit his vehicle and submit to a field sobriety test, to which the appellant agreed. Following the field sobriety tests, Trooper Franz asked the appellant to submit to a portable breathalyzer test, to which the appellant agreed. After the test was completed Trooper Franz noticed that the appellant had something in his mouth. Trooper Franz asked the appellant about the substance in his mouth, and the appellant told Trooper Franz that it was a common Nepalese type of "chew." Trooper Franz asked the appellant to spit out the chew, and then asked him to

open his mouth and stick out his tongue to ensure that there were no large chunks of the chew remaining. Trooper Franz placed the appellant under arrest for OVI, and he was placed, handcuffed, into the back of Trooper Franz's cruiser.

{¶4}    Approximately forty-five (45) minutes later Trooper Franz obtained another breath sample from the appellant utilizing the Intoxilyzer 8000. The appellant had been in custody for the entire time between the portable breath test and the Intoxilyzer 8000 breath test, and at no time could he have put anything else into his mouth. The results of the Intoxilyzer 8000 breath test indicated that the appellant had a blood alcohol content of .119, which was in excess of legal limits. The appellant was charged with Driving in Marked Lanes in violation of R.C. 4511.33, and with Operating a Vehicle While Under the Influence of Alcohol/Drug of Abuse in violation of R.C. 4511.19(A)(1)(A) and (A)(1)(D), to which he pleaded not guilty.

{¶5}    On December 29, 2022, the appellant filed a Motion to Suppress. The appellant argued that all evidence obtained from Trooper Franz's warrantless search should be suppressed because he did not have reasonable suspicion for the stop and detention; and, that the results of the breath test were tainted by the tobacco residue in his mouth and therefore inadmissible.  A hearing was conducted on the Motion to Suppress on February 10, 2023, at which Trooper Franz was the only witness to testify.

{¶6}    Trooper Franz testified that he observed the appellant violate R.C. 4511.33, marked lane violations. He testified further that R.C. 4511.33 is:

> … a rule that defines that the vehicle must maintain their intended lane of
>
> travel. In this case if you were to try to make a lane change here which he
>
> wasn't because he eventually drifts back int o his lane, he would have had

to signal a hundred feet prior. This was a violation - - a marked lanes violation which if there was another vehicle there, he would have encroached into their lane and possibly caused a wreck while the vehicle was legal inside of their lane.

{¶7} Trooper Franz's dashcam footage shows the appellant, while in the far right lane, drifting over the marked dash lane lines separating the two northbound lanes into the next lane by a tire width. Trooper Franz testified that after administering the portable breath test on the appellant, he observed that the appellant had something in his mouth. He also testified that he asked the appellant to spit out the substance, and ensured there was nothing remaining in the appellant's mouth. He testified further that approximately forty-five minutes passed before he administered the Intoxilyzer 8000 breath test. Trooper Franz's dashcam and bodycam footage, which was admitted into evidence, supported his testimony. On March 7, 2023, the trial court issued an Entry overruling the appellant's Motion to Suppress.

{¶8} On June 8, 2023, the appellant pleaded no contest to the charge of operating a vehicle while under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(A), and was found guilty by the trial court. The remaining charges were dismissed. The appellant was sentenced on the same day to a ninety-day jail term with eighty-seven days suspended for three days in a Driver Intervention program; a drug and alcohol assessment; a driver's license suspension until October 25, 2023 with limited driving privileges; a $375.00 fine plus court costs; and, one year of non-reporting good behavior probation with no consumption of-alcohol or illegal drugs.

**{¶9}** The appellant filed a timely appeal in which he sets forth the following assignment of error:

**{¶10}** "I. THE APPELLANT BELIEVES THE TRIAL COURT ERRED WHEN OVERRULING THE DEFENDANT'S MOTION TO SUPPRESS AS IT RELATED TO THE TRAFFIC STOP. APPELLANT-DEFENDANT GHIMIRE ARGUES THAT THERE WAS NO LAWFUL CAUSE FOR THE TRAFFIC STOP, A FAILURE TO DRIVE WITHIN MARKED LANES. THE FINDING WAS CONTRARY TO THE VIDEO EVIDENCE AND OFFICER TESTIMONY PROVIDED IN THE SUPPRESSION HEARING."

**{¶11}** In addition, although not set forth in the "Assignments of Error" section of his brief, the appellant sets forth a second assignment of error in the "Argument" section of his brief in which he submits that his breath test was not administered properly.

## STANDARD OF REVIEW

**{¶12}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154–155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995); *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside, supra*; *Dunlap, supra*; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist.1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal

standard. See *Burnside, supra*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Ornelas, supra*. However, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 698.

## ANALYSIS

### *The Traffic Stop*

{¶13} The appellant first argues that the trial court erred in overruling his motion to suppress because Trooper Franz lacked lawful cause for the traffic stop. We disagree.

{¶14} The court in *State v. Millard,* 11th Dist. Portage No. 2023-P-0041, 2024-Ohio-1342 recently addressed the issue of whether crossing over marked lanes provides reasonable suspicion to initiate a traffic stop. The defendant in *Millard* was operating a motor vehicle on I-76 when she was observed by a law enforcement officer driving onto the white fog line on the far right side of her lane. The officer observed the defendant cross over the fog line "so much so that she hit the rumble strips and then came back into her lane of travel." The defendant then crossed back into the fast lane. *Id.* at ¶7. The defendant was stopped for the marked lane violation, and was observed to be "disheveled, breathing heavily, digging through her stuff, speaking rapidly, touching her hair, and adjusting her shirt." *Id.* at ¶10. The defendant told the officer that the vehicle did not belong to her. The officer asked her to exit the vehicle in order to get additional information about the vehicle's registration, insurance, and owner's address; and, to

conduct an LEADS inquiry. Drugs and other items were found in the vehicle, and the defendant was charged with aggravated possession of drugs and possessing drug abuse instruments.

**{¶15}** The defendant filed a motion to suppress, arguing that the officer lacked the requisite probable cause to conduct the traffic stop. While there was no dashcam footage of the events leading up to the traffic stop, the officer testified at the suppression hearing that she observed the defendant cross over marked lanes. The trial court overruled the motion to suppress. The defendant thereafter pleaded no contest to the charges, and appealed the trial court's ruling on the motion to suppress, arguing that the trial court erred in not suppressing the evidence obtained during the traffic stop. The court of appeals disagreed, stating:

> "It is well established that '[a]n officer's observation of a traffic violation provides probable cause to stop a vehicle.' " *State v. Brown*, 11th Dist. Lake No. 2021-L-017, 2021-Ohio-3078, ¶ 9, quoting *State v. Freshwater*, 11th Dist. Lake No. 2018-L-117, 2019-Ohio-2968, at ¶ 7.

> Crossing over marked lanes is a citable traffic violation under R.C. 4511.33. "Violations of traffic laws not only give rise to a reasonable suspicion that a crime is or about to occur, but can form probable cause for a traffic stop. 'A traffic stop is reasonable when an officer possesses probable cause to believe an individual committed a traffic violation.' " *State v. Armington*, 2019-Ohio-1713, 136 N.E.3d 6, (11th Dist.), ¶ 35 quoting *State v. Davis*, 11th Dist. Portage No. 2005-P-0077, 2006-Ohio-3424, ¶ 23,

citing *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

*Id.* at ¶21-22. In *Millard,* the court of appeals found that the testimony alone of the officer was sufficient to establish the marked lane violation. In the case sub judice, however, not only did Trooper Franz testify as to the appellant's marked lane violation, his dashcam footage supports his testimony.

{¶16} The issue of whether reasonable suspicion existed to justify a traffic stop was also discussed by this Court in *State v. Hill,* 5th Dist. Fairfield NO. 2023-CA-00028, 2024-Ohio-522. The Court in *Hill* cited to the Ohio Supreme Court case of *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4538, 894 N.E.2d 1204, in which one of the issues was whether driving across the white edge line was sufficient to constitute a violation of driving within marked lase statute and thus provide justification for a traffic stop. In reviewing the issue, this Court stated:

> . . . The Supreme Court concluded that a law-enforcement officer who witnesses a motorist drift over lane markings in violation of a statute that requires a driver to drive a vehicle entirely within a single lane of traffic has reasonable and articulable suspicion sufficient to warrant a traffic stop, even without further evidence of erratic or unsafe driving. Id. at syllabus. In *Mays*, the Ohio Supreme Court made the following observation as it pertains to Ohio law,
>
>> Appellant's reliance on [*Dayton v.*] *Erickson* [76 Ohio St.3d 3, 665 N.E.2d 1091 (1996)], and in *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89, is

misplaced. Probable cause is certainly a complete justification for a traffic stop, but we have not held that probable cause is required.  Probable cause is a stricter standard than reasonable and articulable suspicion. *State v. Evans* (1993), 67 Ohio St.3d 405, 411, 618 N.E.2d 162. The former subsumes the latter. Just as a fact proven beyond a reasonable doubt has by necessity been proven by a preponderance, an officer who has probable cause necessarily has a reasonable and articulable suspicion, which is all the officer needs to justify a stop. *Erickson* and *Whren* do not hold otherwise.

119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23. The Ohio Supreme Court concluded, therefore, if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid. 119 Ohio St.3d 406, ¶8. *See, State v. Marcum*, 5th Dist. Delaware No. 18-CAC-11 0083, 2019-Ohio-2293.

*Id.* at ¶21. The Court in *Hill* ultimately held:

Based on our independent review of the cruiser camera video, and in light of Trooper Young's unrefuted testimony found by the trial court to be credible, we find that competent, credible evidence supports the finding that the stop was justified as an investigatory stop because Trooper Young had a reasonable and articulable suspicion that Hill disobeyed a traffic control

device. The facts known to the trooper were sufficient under the facts of this case to allow Trooper Young to stop Hill to confirm or refute (i.e., investigate) the suspicion that Hill disobeyed a traffic control device.

*Id.* at ¶32.

{¶17} We have independently reviewed the dashcam footage of Trooper Franz's stop of the appellant. In light of the footage, together with Trooper Franz's unrefuted testimony during the motion to suppress hearing, which the trial court found to be credible, we find that Trooper Franz had a reasonable and articulable suspicion that the appellant violated a traffic statute. The facts known to Trooper Franz were sufficient under the facts of this case to allow him to stop the appellant. Accordingly, the appellant's assignment of error regarding the traffic stop is without merit.

### *The Breathalyzer Test*

{¶18} The appellant also argues that Trooper Franz did not engage in "proper application of obtaining breath samples" of the appellant, and therefore the results of the appellant's breathalyzer tests should have been suppressed. We disagree.

{¶19} Ohio Administrative Code Section 3701-53-03 addresses breath tests, and states:

(A)     The instruments listed in this paragraph are approved as evidential breath testing instruments for use in determining whether a person's breath contains a concentration of alcohol prohibited or defined by sections 4511.19, and/or 1547.11 of the Revised Code, or any other equivalent statute or local ordinance prescribing a defined or prohibited breath-alcohol concentration. The approved evidential breath testing instruments are:

(1)        BAC DataMaster, BAC DataMaster K, BAC DataMaster cdm;

(2)        Intoxilyzer model 5000 series 66, 68 and 68 EN;

(3)        Intoxilyzer model 8000 (OH-5);

(4)        Intox DMT (OH); and

(5)        Intoxilyzer model 9000 (OH).

(B)     Approval for instruments listed under paragraphs (A)(1) and (A)(2) of this rule will expire two years from the effective date of this rule, unless an exemption is requested by a law enforcement agency and approved by the director.

(C)     Breath samples of deep lung air will be analyzed for purposes of determining whether a person has a prohibited breath alcohol concentration with instruments approved under paragraph (A) of this rule.

(D)     For instruments listed under paragraphs (A)(1) and (A)(2) of this rule:

(1)     Breath samples are to be analyzed according to the operational checklist for the instrument being used; and

(2)     Checklist forms prescribed by the director that record the results of subject tests are to be retained in accordance with paragraph (B) of rule 3701-53-01 of the Administrative Code.

(E)     Breath samples using the instruments listed under paragraphs (A)(3), (A)(4) and (A)(5) of this rule are to be analyzed according to the instrument display for the instrument being used.

In this case Trooper Franz utilized the Intoxilyzer 8000; thus, breath samples must be analyzed according to the Intoxilyzer 8000's display.

{¶20} During his administration of the portable breath test Trooper Franz noticed that the appellant had a substance in his mouth. When asked about the substance the appellant told Trooper Franz that it was a common Nepalese type of chew. Trooper Franz asked the appellant to spit out the chew, and then asked him to open his mouth and stick out his tongue to ensure that there were no large chunks of the chew remaining in the appellant's mouth. Trooper Franz arrested the appellant, placed him in handcuffs behind his back and into the back of the cruiser.

{¶21} Trooper Franz obtained another breath sample from the appellant utilizing the Intoxilyzer 8000 approximately forty-five (45) minutes later. Trooper Franz's bodycam footage documented this breath test, and illustrated the Intoxilyzer 8000 performing an internal self-competence check prior to the appellant's breath sample. Two breath samples were then taken, approximately two minutes apart. Trooper Franz testified that while he noticed some discoloration of the top of the appellant's tongue, there were no bits or pieces of any substance in the appellant's mouth at the time the Intoxilyzer 8000 breath tests were performed. The results of the Intoxilyzer 8000 breath test indicated that the appellant had a blood alcohol content of .119, which was in excess of legal limits.

{¶22} The court in *State v. Aicher,* 2nd Dist. Montgomery No. 27570, 2018-Ohio-1866, 112 N.E.3d 85, addressed the validity of breath test results obtained with the Intoxilyzer 8000:

> None of the relevant Ohio Administrative Code provisions specifically provide for a 20 minute observation period; however, we recognize that there is a plethora of case law indicating that the "operational checklist" used for the other types of breath-testing instruments includes a 20 minute

observation period before testing. *See Bolivar v. Dick,* 76 Ohio St.3d 216, 218, 667 N.E.2d 18 (1996); *State v. Tenney,* 2d Dist. Montgomery No. 24999, 2012-Ohio-3290, 2012 WL 2948498, ¶ 6. Because an Intoxilyzer 8000 was used in this case, Aicher's breath sample was required to be tested in accordance with the machine's "instrument display," not an "operational checklist." The record, however, does not indicate whether the instrument display included a 20 minute observation period. Nevertheless, even if we were to assume that a 20 minute observation period was required, the evidence presented by the State indicates that it substantially complied with such a requirement.

"Substantial compliance only requires evidence that during the 20 minutes before the breath test the defendant did not ingest anything that might skew the test result." *Tenney* at ¶ 7, citing *State v. Adams*, 73 Ohio App.3d 735, 740, 598 N.E.2d 176 (2d Dist.1992), citing *State v. Steele*, 52 Ohio St.2d 187, 370 N.E.2d 740 (1977). " 'A witness who testifies to that foundational fact is not required to show that the subject was constantly in his gaze, but only that during the relevant period the subject was kept in such a location or condition or under such circumstances that one may reasonably infer that his ingestion of any material without the knowledge of the witness is unlikely or improbable.' " *Id.*, quoting *Adams* at 740, 598 N.E.2d 176. It is therefore immaterial whether a subject was observed by several different officers. *See Bolivar* at 218, 667 N.E.2d 18 ("[W]hen two or more officers, one of whom is a certified operator of the BAC Verifier,

observe a defendant continuously for twenty-minutes or more prior to the administration of a breath-alcohol test, the twenty-minute observation requirement of the BAC Verifier operational checklist has been satisfied.").

*Id.* at ¶34-35.

{¶23} The issue of whether tobacco residue skewed a breathalyzer test was addressed by the court in *State v. Dierkes,* 11rd Dist. Portage No. 2008-P-0085, 2009-Ohio-2530. The defendant in *Dierkes* argued that the breathalyzer test administered by law enforcement was tainted because he had chewing tobacco in his mouth within the two hour time period prior to administration of the test, and that the test results were therefore unreliable and should be suppressed. The trial court overruled the defendant's motion to suppress. The court of appeals affirmed, stating that the trial court found the defendant had chewing tobacco in his mouth for one-half hour before he was stopped, but this did not constitute oral intake during the twenty minutes prior to the breathalyzer test. *Id.* at ¶47. The test was therefore valid. The *Dierkes* court went on to state:

> We hold the trial court did not err in finding that Trooper Lamm substantially complied with the 20–minute observation requirement. We further hold that appellant failed to demonstrate prejudice from any deviation from this requirement.
>
> Appellant suggests the trooper should have asked him whether he had any lingering digestive juices in his mouth during the observation period from something he ingested prior to that time. Appellant has not drawn our attention to any requirement in the Ohio Administrative Code or case law that such question be asked. In a similar context, in *State v. Delarosa,* 11th

Dist. No.2003–P–0129, 2005–Ohio–3399, this court held that since the N.H.T.S.A. standards do not require an officer administering the H.G.N. test to ask whether the defendant is wearing contact lenses, there is no such requirement. *Id.* at ¶ 47.

As the Supreme Court held in *Bolivar,* supra, the purpose of the mandatory observation period is to prevent oral intake of any material by the defendant *during that period.* It would be futile to require officers administering breathalyzer tests to ask defendants if they had any digestive juices in their mouth from something previously ingested because the answer could not be verified. The obvious point of the observation requirement is to prevent oral intake by the defendant during the period of time the officer has him under observation.

*Id.* at ¶50-52.

**{¶24}** In this case, Trooper Franz observed the appellant with something in his mouth at the time of the portable breathalyzer test. Upon further inquiry he learned that the appellant had Nepalese chew in his mouth. Trooper Franz asked the appellant to spit out the chew, and the appellant did so. Trooper Franz then looked into the appellant's mouth to ensure there were no pieces of chew remaining. He administered the Intoxilyzer 8000 breath test approximately forty-five (45) minutes later.

**{¶25}** Ohio Administrative Code Section 3701-53-03 requires only that breath samples using the Intoxilyzer 8000 be analyzed according to the instrument display. There is no evidence that Trooper Franz failed to adhere to said requirements. Furthermore, he waited nearly forty-five minutes after the appellant spit out the Nepalese

chew before administering the breathalyzer test, well beyond the twenty minute observation period generally recommended for the administration of breathalyzer tests. We find no error in the trial court's decision that the appellant's breathalyzer test results were in compliance with the Ohio Administrative Code, and the appellant's argument regarding the breathalyzer test results is without merit.

## CONCLUSION

{¶26} Based upon the foregoing, we find appellant's assignments of error are without merit, and are therefore overruled. The judgment of the Fairfield County Municipal Court Pleas is hereby affirmed.

By: Baldwin, J.

Wise, John, P.J. and

King, J. concur.